In re the MARRIAGE OF Alan David PHILLIPS and Lucia Maria Phillips.

Alan David Phillips, Appellant,

and

Lucia Maria Phillips (now Henrie), Respondent.

No. 14688.

Missouri Court of Appeals, Southern District, Division One.

Jan. 21, 1987.

Thomas E. Klinginsmith, Carthage, for appellant.

No appearance for respondent.

CROW, Chief Judge.

Alan David Phillips ("Alan") appeals from a judgment denying his "First Amended Request to Assume Jurisdiction Pursuant to Uniform Child Custody Jurisdiction Act and Modify Decrees of Dissolu-

tion." His two assignments of error require an abbreviated history of the litigation between the parties.

In October, 1980, Alan and his then wife, Lucia Maria Phillips ("Lucia"), from whom Alan was separated, were residing in Fairfax County, Virginia. A "Property Settlement Agreement" signed by them October 4, 1980, provided, among other things, that Lucia was to have custody of the parties' daughter, Monica Alice Phillips ("Monica"), born November 6, 1971. Alan, per the agreement, was to have visitation "[e]very other weekend, ... one week during the summer, with reasonable notice to [Lucia] of said week, alternating major Federal holidays ... and such other mutually agreeable visitation as agreed to between the parties."

Alan, unaccompanied by Lucia or Monica, left Virginia and came to Jasper County, Missouri, in "December of '80 or January of '81," where he has since remained.

On July 7, 1981, Alan filed a petition for dissolution of marriage in the Circuit Court of Jasper County, alleging, among other things, that Monica was residing with Lucia in Fairfax County, Virginia. The petition requested that Lucia be awarded custody of Monica, with Alan to receive "reasonable visitation privileges." A summons, together with a copy of Alan's petition, was served on Lucia by a deputy sheriff in Fairfax County, Virginia, July 14, 1981.

On October 26, 1981, Lucia filed a "Bill of Complaint" against Alan in the Circuit Court of Fairfax County, Virginia, seeking a decree of divorce. The complaint prayed, among other things, that the property settlement agreement of October 4, 1980, be "ratified, confirmed and approved and made an enforceable part of" any decree therein entered. A "Subpoena in Chancery," together with a copy of the complaint, was served on Alan by a deputy sheriff in Jasper County, November 6, 1981.

Lucia filed no responsive pleading to Alan's petition, and on November 17, 1981, Alan appeared with counsel in the Circuit Court of Jasper County. Evidence was

heard, after which the court entered its findings on the "docket sheet." A decree reflecting those findings was to be prepared by Alan's lawyer.

On December 4, 1981, the Circuit Court of Jasper County entered a decree dissolving the marriage of Alan and Lucia. The decree provided, among other things, that Lucia was to have "the exclusive care, custody, and control" of Monica, and that Alan was to have "the right to reasonable visitation."

On January 30, 1982, the Circuit Court of Fairfax County, Virginia, entered a decree awarding Lucia a divorce from Alan. The decree provided that the property settlement agreement of October 4, 1980, was "ratified, confirmed and approved and made an enforceable part of this Decree so far as allowable under Virginia law."

During the ensuing three years, Alan had only "minimal contacts" with Monica. He saw her occasionally in Virginia and once at his parents' home in the state of New York. Alan explained that Monica was outside the United States in 1983 and 1984, during which time he had only "one or two letters from her," but that when she was in the United States he talked with her by phone "about once a month," and received a letter from her "every three months."

In the spring of 1985, Alan and Lucia agreed that Monica could visit Alan in Jasper County. Alan testified:

"We agreed ... that I would pay for ... transportation for Monica to come from Virginia to Missouri, that the visitation would not have a definite time length, that it could be lengthened or shortened depending on how well Monica fit in and enjoyed herself here.... I agreed to ... pay transportation both ways."

Pursuant to that arrangement, Monica arrived at Alan's home June 14, 1985. It was the first time she had ever been in Missouri. Alan's testimony:

"Q. ... So, it was contemplated at that point in time that the child would in fact be returned to the State of Virginia, is that correct?

A. It was contemplated..

Q. When was the child to be returned to the State of Virginia?

A. There was no date set for the child to return to Virginia.

. . . .

Q. Was your understanding that the child was to be returned to the State of Virginia?

A. At that time, yes."

On July 23, 1985, in the sixth week of Monica's visit, Alan filed a motion in the Circuit Court of Jasper County, alleging that a substantial and continuing change of circumstances had occurred since entry of the Missouri and Virginia decrees awarding custody of Monica to Lucia, and that by reason thereof Monica's best interest would be served by awarding custody to him.

The motion averred that the court should exercise jurisdiction under § 452.450, RSMo 1978, in that Monica was presently residing with Alan in Missouri, that she had a "significant connection" with Jasper County, having been there from June 14, 1985, that she had made many friends there and desired to attend public school there, that there was substantial evidence concerning her present and future care, protection, training and personal relationships in Missouri, that it was necessary to protect her from threatened mistreatment or abuse in Virginia, and that no other state which would have jurisdiction under § 452.450 was more appropriate to exercise jurisdiction than said court.

On August 1, 1985, Alan filed a motion in the Circuit Court of Jasper County, seeking temporary custody of Monica. Lucia, on August 16, 1985, filed a motion to dismiss Alan's motion for temporary custody, and on August 21, 1985, the Circuit Court of Jasper County granted Lucia's motion to dismiss.

That same day, August 21, Alan filed his First Amended Request to Assume Jurisdiction Pursuant to Uniform Child Custody Jurisdiction Act and Modify Decrees of Dissolution. It paralleled his motion of July

23, 1985, and added that he had no information of any custody proceedings concerning Monica pending in Missouri or any other state.[1] The motion prayed the trial court to exercise jurisdiction over the issue of Monica's custody and determine that Missouri was the appropriate forum therefor. It further prayed "that the decrees be modified for the physical care and custody of [Monica] to be placed in [Alan]."

On October 4, 1985, Lucia, "specially appearing," filed a motion to dismiss Alan's pleading of August 21. Lucia's motion averred there were "insignificant contacts with the State of Missouri to confer jurisdiction of this Court pursuant to the Uniform Child Custody Jurisdiction Act, Section 452.440 *et seq.* R.S.Mo." Lucia's motion further alleged that the Jasper County decree of dissolution of marriage filed December 4, 1981, was void "because of the prior jurisdiction of the Circuit Court of Fairfax County, Virginia."

The trial court thereafter conducted two evidentiary hearings on the issue whether it had jurisdiction to make a custody determination regarding Monica.

On March 11, 1986, the trial court entered judgment finding that on November 17, 1981, it did not have jurisdiction over the question of Monica's custody, and that Virginia "was and still is the home state of the child." The trial court further found that Monica was visiting in Missouri 39 days prior to the filing of Alan's original motion to modify, and that Alan had failed to establish a significant contact with Monica and the state of Missouri, or the existence of an emergency situation as required by § 452.450, RSMo 1978. Finally, the trial court found that Virginia "appears to have

jurisdiction over the custody issue." On the basis of those findings, the trial court denied Alan's First Amended Request to Assume Jurisdiction Pursuant to Uniform Child Custody Jurisdiction Act and Modify Decrees of Dissolution. This appeal followed.

We consider Alan's second assignment of error first. It states:

"The trial court erred in dismissing [Alan's] request to assume jurisdiction in this child custody proceeding in that the evidence showed that the best interest of the child would be served by the Missouri court taking jurisdiction and the child and at least one litigant had significant connections with the state and there was available in Missouri substantial evidence concerning the child's present and future care, protection, training, and personal relationships."

In arguing the above point, Alan does not dispute the trial court's finding that Virginia is Monica's home state. He insists, however, that the trial court should have exercised jurisdiction under § 452.-450.1(2), RSMo 1978.[2]

Inasmuch as § 452.410, RSMo Cum. Supp.1984, provides, among other things, that a court shall not modify a prior custody decree unless it has jurisdiction under § 452.450, Alan recognizes it was necessary that he establish that the trial court had jurisdiction under one of the provisions of the latter section. He maintains, as noted above, that the evidence established jurisdiction under subdivision "(2)" of subsection "1" of that section.[3]

We need not, in resolving this appeal, decide whether the evidence was adequate

---

1. That addition was evidently made in an effort to comply with § 452.480, RSMo Cum.Supp. 1984.

2. Section 452.450.1, RSMo 1978, provides, in pertinent part:

"A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by ... modification decree if:

. . . .

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The ... child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

. . . ."

3. Footnote 2, *supra.*

for such purpose, as § 452.505, RSMo 1978, states:

"If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 452.440 to 452.550 or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction."

Virginia adopted the Uniform Child Custody Jurisdiction Act effective January 1, 1980. Laws 1979, c. 229. Va.Code Ann. §§ 20-125 to 20-146. Alan has never disputed the validity of the custody provision in the Virginia divorce decree. Indeed, the validity thereof could hardly be challenged, as Virginia was unquestionably Monica's home state at the time Lucia filed her divorce action there in 1981, and Virginia remained Monica's home state through the time the Virginia decree was entered. Alan's recognition of the validity of the Virginia decree is demonstrated by his prayer that the Circuit Court of Jasper County modify the custody provision of *both* the Missouri decree and the Virginia decree.

As Virginia was concededly Monica's home state (§ 452.445(4), RSMo Cum.Supp. 1984) at the time Alan commenced his modification proceeding in Jasper County on July 23, 1985, there was no showing—nor could there be—that Virginia lacked jurisdiction, at that time, to determine Monica's custody under jurisdictional prerequisites substantially in accordance with §§ 452.440 to 452.550, RSMo 1978, as amended. There was likewise no showing that Virginia had declined to assume jurisdiction to modify the custody provision in the Virginia decree, as Virginia had never been asked to do so.

In such circumstances, the Circuit Court of Jasper County was barred by § 452.505, quoted above, from modifying the custody provision of the Virginia decree.

One may ask, however, whether the Circuit Court of Jasper County was similarly forbidden from modifying the custody provision of its own 1981 decree. The answer, we believe, lies in said court's determination in the instant proceeding that it did not, in 1981, have jurisdiction over the issue of Monica's custody.

In that regard, the version of the Uniform Child Custody Jurisdiction Act adopted in Missouri (S.C.S.H.B. 914, Laws 1978, pp. 688-95) became effective August 13, 1978, and was thus in effect when Alan filed his petition for dissolution in Jasper County in 1981. As reported earlier, that pleading averred that Monica was residing with Lucia in Virginia, and alleged nothing that would have conferred jurisdiction on the Circuit Court of Jasper County under § 452.450, RSMo 1978, to make a custody determination regarding Monica.

We are consequently persuaded that the trial court was correct in holding, in the instant case, that it did not, in 1981, have jurisdiction to decide the issue of Monica's custody. That being so, there was no valid Missouri custody order that the trial court could have modified in the instant proceeding.

In reaching that conclusion, we do not overlook *Brown v. Brown*, 676 S.W.2d 519 (Mo. banc 1984), cited by Alan. It is simply not in point. There, both spouses and the children resided in Missouri when the marriage was dissolved and custody was adjudicated in 1980, thus Missouri unquestionably had jurisdiction at that time to make the custody determination. The jurisdictional issue arose later, after the custodial parent, with the trial court's permission, had moved to another state, taking the children with her. The noncustodial parent, who remained in Missouri, subsequently filed an action seeking custody in the court that had entered the dissolution decree. The custodial parent, as we understand *Brown*, did not object to the jurisdiction of that court to hear and determine the modification proceeding. The noncustodial

parent prevailed, winning custody of the children. On appeal to the Court of Appeals, one judge transferred the cause to the Supreme Court of Missouri because of his belief that the Missouri court no longer had jurisdiction to adjudicate custody. The Supreme Court held that the Uniform Child Custody Jurisdiction Act did not disable the Missouri court from exercising jurisdiction in the modification proceeding *when neither party objected to its jurisdiction. Id.* at 520[1].

In the instant case, neither Lucia nor Monica had ever been in Missouri prior to entry of the 1981 dissolution decree, and nothing suggests that Lucia conceded that the Circuit Court of Jasper County had jurisdiction, in 1981, to adjudicate custody. Indeed, Lucia pursued her own divorce action in Virginia after entry of the Jasper County decree, and obtained the Virginia decree the following month.

When Alan commenced the instant proceeding, Lucia timely objected to jurisdiction, and preserved the objection throughout the proceedings below. The instant case, therefore, is not ruled by *Brown.*

In sum, we have before us a valid custody order in the 1982 Virginia decree and, as the trial court correctly found, an invalid custody order in the 1981 Jasper County decree.[4] As the custody order in the Virginia decree was the only valid custody order, the trial court, as we have seen, was barred by § 452.505, *supra,* from modifying it. Alan's second assignment of error is, accordingly, denied.

Alan's first assignment of error, which we bypassed earlier, attacks the trial court's finding that it did not have jurisdiction to determine Monica's custody when it entered the 1981 dissolution decree. What we have said regarding Alan's second point disposes of his first.

Judgment affirmed.

**4.** We do not imply that the Circuit Court of Jasper County, in 1981, lacked jurisdiction to adjudicate any of the other issues covered by its

GREENE, P.J., and PREWITT, J., concur.

TITUS, J., not participating.

decree. The custody issue is the sole issue before us, and our opinion is confined to that issue alone.